IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEVEN QUIN SPANN, | ) | |
| AIS #251840, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-706-WKW-KFP |
| | ) | |
| DRANARRIS LOVEJOY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Steven Quin Spann, an inmate at the Donaldson Correctional Facility in Bessemer, Alabama, filed pro se this civil rights action under 42 U.S.C. § 1983 alleging certain violations of his federally protected rights while incarcerated in the Easterling Correctional Facility in Clio, Alabama. Doc. 1. Plaintiff brings suit against Easterling employees Dranarris Lovejoy, Anthony Crittenden, and Timothy Isaac for their alleged use of excessive force, failure to protect, and deliberate indifference to Plaintiff's serious medical needs. *Id*. For relief, Plaintiff requests monetary damages for his pain and suffering. *Id*. at 5.

Pursuant to the Court's orders, Defendants filed an Answer and Special Report with supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. 22. The Court subsequently informed Plaintiff that Defendants' special report may, at any time, be treated either as a motion to dismiss or a motion for summary judgment, and the Court explained to Plaintiff the proper manner to respond to a motion for summary judgment. Doc. 23.

Plaintiff filed his response to Defendants' special report (Doc. 24), and this case is now pending on Defendants' Motion for Summary Judgment (Doc. 22). Upon consideration of the motion, the supporting evidentiary materials, and Plaintiff's opposition, the Court concludes that the motion is due to be GRANTED in part and DENIED in part, as set forth below.

## I.    STANDARD OF REVIEW

To survive the properly supported Motion for Summary Judgment submitted by Defendants, Plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro

se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")).

In this case, while Plaintiff has not established a genuine issue of material fact to preclude summary judgment on his claims of deliberate indifference, he has established a genuine issue of material fact to preclude summary judgment on his claims of excessive force and failure to protect asserted against Defendants in their individual capacities.

## II.    FACTUAL BACKGROUND

Plaintiff commenced this pro se action for alleged violations of his federally protected constitutional rights while confined at Easterling. Doc. 1. He alleges that Defendant Crittenden opened Plaintiff's cell and allowed Defendants Lovejoy and Isaac to

physically assault him. *Id*. at 3. Plaintiff further alleges that, after the assault, his medical treatment was delayed for approximately seven hours and, when he eventually received medical care, he was treated for "multiple fractured bones, a concussion, and many lacerations and bruises." *Id*. Plaintiff's claims stem from the facts below, viewed in the light most favorable to Plaintiff.

On November 11, 2018, Defendant Lovejoy filed a "Duty Officer Report" describing an incident involving Plaintiff. *See* Doc. 22-6. According to the report:

> On November 11, 2018, at approximately 10:45 AM, [Defendants Lovejoy, Isaac, and Crittenden] responded to Restrictive Housing Unit cell B-16, which housed inmates Jamarian Thornton…and [Plaintiff] due to inmates yelling 'man down in 16 cell.' [Defendant Lovejoy] approached the cell and observed inmate Thornton slumped over on the toilet complaining that he could not breathe. [Defendants Crittenden and Isaac] removed inmate Thornton from the cell and began escorting inmate Thornton to the lobby area. [Defendant Lovejoy] attempted to close the cell door. As [Defendant Lovejoy] closed the cell door, [Plaintiff] swung with a closed fist and punched [Defendant Lovejoy] in the facial area. [Defendant Lovejoy] swung with a closed fist and struck [Plaintiff] in the facial area, grasped [Plaintiff] and placed [Plaintiff] on the floor. [Defendant Isaac] reported back to the cell and placed handcuffs on [Plaintiff]. All force ceased. [Defendant Lovejoy] attempted to get [Plaintiff] escorted to the Health Care Unit to be assessed by the medical staff but [Plaintiff] refused. At approximately 7:10 PM, Correctional Sergeant Kendrick Boyd escorted [Plaintiff] to the Health Care Unit to be assessed by the medical staff. The medical staff noted redness and abrasions to the back, a bruised right eye and swelling to the right hand. At approximately 10:40 PM, [Defendant Lovejoy] reported the incident to Correctional Captain Joseph Danzey. [Plaintiff] remained in the Restrictive Housing Unit pending disciplinary action for rule violation; Assault on person associated with ADOC.

*Id*. Pursuant to the Incident Report subsequently filed by Captain Danzey:

> On November 11, 2018, at approximately 7:01 PM, [Plaintiff] reported to Sergeant Kendrick Boyd that he was assaulted at approximately 2:00 PM, by [Defendants Lovejoy and Isaac]. [Plaintiff] alleged that [Defendants Lovejoy

and Isaac] entered his cell and beat him because he was kicking on the cell door. [Plaintiff] stated that he struck [Defendant Lovejoy] in the face during the altercation. At approximately 7:10 PM, Sergeant Boyd entered the Health Care Unit with [Plaintiff] for a medical assessment. [Plaintiff] was examined by Nurse Clayton Fuller. Nurse Fuller noted redness and abrasions to [Plaintiff's] head and back, bruising underneath the left eye and swelling to the right hand; see attached medical assessment. At approximately 7:12 PM, the incident was reported to Captain Joseph Danzey, I&I Investigator David Gallew, Walter Myers, Warden III, and Institutional Coordinator Cheryl Price. Investigator Gallew advised Sergeant Boyd that an investigator would be dispatched to the facility. This incident is pending further investigation by the Investigations and Intelligence Division.

Doc. 22-5. Plaintiff's November 11, 2018, body chart (medical examination) indicates that he had "scattered redness and abrasions" on his back, arms, and left side of face, swelling to his right hand, and bruising to his left eye. Doc. 22-7. In the section designated for the inmate's statement, Plaintiff asserted: "The Officer's [sic] jumped on me." *Id*. Photographs taken of Plaintiff show that he had abrasions on his back and arm, a bruised left eye, and a swollen right hand. Doc. 22-9 at 4–7.

On November 11, Plaintiff provided the following written statement of the incident:

I was trying to get an officers [sic] attention to let them know my roommate needed his breathing treatment. He told me he was going to give me what I wanted for beating on the window. They took my roommate out and [Defendant Lovejoy] came in and swung on me and struck me in my face. When I defended myself, [Defendant Isaac] came in and struck me also. [Defendant Isaac] held me down while [Defendant Lovejoy] hit me numerous times. I told them they had it 5 times before they stopped jumping me. My hands broke [sic] feels like my ribs are broke [sic] and I feel dizzy when I lay down. I was tryna [sic] help my roommate that's all. If you look at [Defendant Lovejoy] the Sgt face I hit him back and he was also [sic] busted under his eye.

Doc. 22-8. Plaintiff's medical records indicate that he was prescribed Advil on November 11 and assessed for "mild" contusions. Doc. 22-11 at 1, 12. According to this assessment,

Plaintiff was in an "altercation" at approximately 2:00 p.m. and suffered from scattered redness and swelling and a swollen right hand. *Id*. at 12-13. Plaintiff was provided an ace wrap for his right wrist/hand. *Id*. at 20.

A few days later on November 14, medical personnel x-rayed Plaintiff's left eye and right hand. *Id*. at 6, 27. According to the radiology report assessing Plaintiff's eye, Plaintiff suffered pain and bruising to his left eye. *Id*. at 6. The findings of Plaintiff's report assert: "Possible small chip fracture of the anterior maxillary spine. No orbital fracture is seen. Walls of the maxillary sinuses appear intact, maxillary sinuses are clear without opacification or fluid levels. Visualized facial structures are unremarkable." *Id*. Plaintiff's radiology report recommended a follow-up as clinically indicated and, if there was concern for an orbit fracture, a CT should be performed. *Id*. Plaintiff's right-hand radiology report noted that, while Plaintiff experienced pain in his hand, there was "no acute fracture, dislocation, or subluxation." *Id*. at 27.

Two days later, Plaintiff submitted a sick call request stating: "I am having very bad headaches and I feel dizzy when I lay down. If you could please help me asap. Thank you." *Id*. at 15. That same day, Plaintiff was assessed for a headache. *Id*. at 14. Under the section asking whether he suffered from a head trauma, seizure, migraine, allergy, HTN, or stress, Plaintiff indicated that he was in an altercation a few days before and that he had suffered from headaches since then. *Id*.

On November 21, Plaintiff had another inmate body chart performed, and it showed no notable injuries. *Id*. at 10, 17. On December 9, approximately one month after the incident, Plaintiff submitted a sick request form stating: "I've been feeling sick the last

couple of days. My stomach has been upset and I've had really bad headaches." Doc. 22-11 at 2. He was assessed for his medical complaint the next day. *Id*. at 3. While being assessed, Plaintiff told medical personnel that, although his head and stomach hurt, he did not suffer from any recent head trauma. *Id*.

## III.    DISCUSSION

In his Complaint, Plaintiff alleges Defendant Crittenden opened his cell door and allowed Defendants Lovejoy and Isaac to physically assault Plaintiff. Doc. 1 at 3. He claims Defendants Lovejoy and Isaac hit him multiple times in his face, head, stomach, chest, legs, and back. *Id*. at 4. Plaintiff further asserts that Defendants denied him medical treatment for seven hours after the assault and that it was only after shifts changed and Officer Boyd saw him wounded that he received treatment. *Id*. Plaintiff maintains that he was treated for multiple fractures, a concussion, lacerations, and bruising. *Id*. He denies punching Defendant Lovejoy first and alleges instead that Defendant Lovejoy punched him first. *Id*.; Doc. 24 at 5. Plaintiff contends that, when he tried to defend himself against Defendant Lovejoy, Defendant Isaac picked him up and slammed him to the floor, where Defendants Lovejoy and Isaac continued to kick and stomp him. *Id*.

Defendants assert, among other things, that they are entitled to immunity in their individual and official capacities and, in any event, that Plaintiff's claims should be dismissed because his alleged injuries are *de minimis* and were incurred when force was used to maintain order and restore discipline. Defendants further contend that they did not deny Plaintiff medical treatment. *See* Doc. 22.

### A.    Sovereign Immunity

To the extent Plaintiff brings suit against Defendants in their official capacity, Defendants are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). It is clear that Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.    Qualified Immunity

With respect to Plaintiff's excessive force claims against Defendants in their individual capacities, Defendants argue not only that Plaintiff's claims are subject to dismissal but also that they are entitled to qualified immunity.

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the

> defendant is not entitled to qualified immunity. *Skop [v. City of Atlanta*, 485
> F.3d 1130, 1136-137 (11th Cir. 2007)]. To defeat qualified immunity, a
> plaintiff must show both that a constitutional violation occurred and that the
> constitutional right violated was clearly established. *Fennell [v. Gilstrap*, 559
> F.3d 1212, 1216 (11th Cir. 2009) (per curiam) *abrogated on other grounds
> by Kingsley v. Hendrickson*, 576 U.S. 389, 400, 135 S.Ct. 2466 (2015); *see
> also Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1186 (11th Cir. 2020)
> ("[A]lthough the *Johnson*/*Fennel* exception continues to apply to Eighth
> Amendment claims, we must abandon it as applied in the Fourteenth
> Amendment context")]. In Eighth Amendment excessive force cases,
> however, 'the subjective element required to establish [the constitutional
> violation] is so extreme that every conceivable set of circumstances in which
> this constitutional violation occurs is clearly established to be a violation of
> the Constitution.' *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.
> 2002); *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. at
> 400.

*Bowden v. Stokely*, 576 Fed. App'x 951, 954-955 (11th Cir. 2014) (per curiam). "While

. . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where

the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive

force claim, summary judgment based on qualified immunity is not appropriate." *Id.* at 956

(citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). Accordingly, the Court

will consider whether violations of Plaintiff's Eighth Amendment rights are established

based on his allegations that Defendants Lovejoy and Isaac, without justification,

physically assaulted him while Defendant Crittenden watched and then left Plaintiff

without medical treatment for seven hours, which the Court must take as true for purposes

of summary judgment.

### (1)    Excessive Force Claims

Claims of excessive force by prison officials against convicted inmates are

governed by the Eighth Amendment's proscription against cruel and unusual punishment.

*Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).

On November 11, 2018, at approximately 7:01 p.m., Plaintiff told Correctional Sergeant Boyd that he was having trouble breathing, needed to go to medical, and had been in "an altercation with [Defendant Lovejoy]." *See* Doc. 22-5 at 1; *see also* Doc. 22-10 at 1. During Plaintiff's November 11 medical exam, Plaintiff told medical personnel that he was "jumped" by officers. Doc. 22-7 at 1. The photographs taken on November 11 show that Plaintiff had (a) abrasions and redness on his back and arm, (b) a swollen wrist and hand, and (c) a bruised left eye. Docs. 22-9 at 4-7. Plaintiff's medical records show that he was provided an ace wrap for his right wrist/hand. Doc. 22-11 at 20.

His medical records also show that, on November 14, medical personnel x-rayed his left eye and right hand. *Id.* at 6, 27. Pursuant to the radiograph findings, while none of the bones in Plaintiff's hand or face appeared to be broken, there was a "[p]ossible small chip fracture of the anterior maxillary spine" in his left eye. *Id.* Finally, Plaintiff's medical records show that he sought medical treatment on November 16 for headaches and dizziness and informed medical personnel that he was in an altercation a few days prior. *Id.* at 14-15.

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (internal

quotations omitted). In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). However, "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.' *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.' *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. "When prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some

arbitrary quantity of injury." *Wilkins*, 559 U.S. at 38 (internal quotations and citation omitted). Thus, in an excessive force case like this, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 Fed. App'x at 953 (internal quotations and citation omitted).

Plaintiff's evidence reflects that on November 11, 2018, while housed in Easterling, Defendants Lovejoy and Isaac entered Plaintiff's cell, Defendant Lovejoy hit Plaintiff in the head and face, and, when Plaintiff tried to defend himself, Defendant Isaac picked Plaintiff up and slammed him to the floor. Doc. 24 at 5.[1] Plaintiff's evidence also shows that Defendants Lovejoy and Isaac kicked and stomped Plaintiff until he was unresponsive and that Defendant Crittenden stood by the cell door and watched the alleged assault. *Id*. Plaintiff told medical personnel that he was "jumped" by officers and that Plaintiff had redness and abrasions on his back and arm, a bruised left eye, and a swollen right hand. *See e.g.*, Docs. 22-7 at 1, 22-9 at 4-7.

Even though Defendants dispute the version of events Plaintiff presents (*see* Docs. 22-2 at 1-2; 22-3 at 1-2; 22-4 at 1-2), the Court is required at this stage of the proceedings to view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Correctional Service, Inc*., 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment). In that vein, Plaintiff states

---

[1]     Doc. 24 at 5 is Plaintiff's affidavit submitted in response to Defendants' answer and special report.

that he was assaulted by Defendant Lovejoy without reason and then, when he tried to defend himself, he was picked up and slammed down by Defendant Isaac and then kicked and stomped until unresponsive. Plaintiff's medical records show that Plaintiff suffered injuries, that he required x-rays of his eye and hand, and that he suffered headaches and dizziness days after the incident. This version of the events could support an excessive force claim. *Bowden*, 576 Fed. App'x at 954.

While Defendants deny every allegation Plaintiff asserts, viewing the facts in the light most favorable to Plaintiff, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used, and whether Defendants Lovejoy and Isaac acted "maliciously and sadistically" to cause harm. *Skrtich*, 280 F.3d at 1301; *see also Rivera v. LeBron*, 824 F. App'x 838, 842 (11th Cir. 2020) ("[E]vidence that merely 'pit[s] the correctional officers' word against' an inmate's is distinct from the type of videotape evidence that . . . definitively established what happened and what did not.'") (citations omitted). Thus, the Court concludes Defendants Lovejoy and Isaac are not entitled to qualified immunity. Plaintiff has alleged facts sufficient to survive Defendants' Motion for Summary Judgment regarding Plaintiff's excessive force claim, and summary judgment is due to be denied as to the claim against Defendants Lovejoy and Isaac in their individual capacities.

### (2)    Failure to Protect Claims

Next, Plaintiff asserts Defendant Crittenden is liable for failing to intervene when he allegedly watched Defendants Lovejoy and Isaac assault Plaintiff and did nothing to stop them. "Even when an officer is not a participant in the excessive force, he can still be

liable if he fails to take reasonable steps to protect the victim." *Ledlow v. Givens*, 500 Fed.

App'x 910, 914 (11th Cir. 2012) (citing *Skrtich,* 280 F.3d at 1301). Specifically, "an officer

who is present at the scene and who fails to take reasonable steps to protect the victim of

another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller*

*v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985). Thus, a corrections officer's

failure to intervene in a beating can be the basis for liability for an Eighth Amendment

violation under § 1983 if the corrections officer had a reasonable opportunity to intervene

and refused to do so. *Hinds v. Wetzel*, No. CV 18-0481-KD-MU, 2020 WL 6732514, at *4

(S.D. Ala. Oct. 21, 2020), *report and recommendation adopted,* No. CV 1:18-00481-KD-

MU, 2020 WL 6731702 (S.D. Ala. Nov. 16, 2020) (citing *Terry v. Bailey*, 376 F. App'x

894, 896 (11th Cir. 2010) (in turn citing *Ensley v. Soper*, 142 F. 3d 1402, 1407 (11th Cir.

1998)); *see also Gruenwald v. Maddox*, 274 Fed. Appx. 667 (10th Cir. 2008). However,

for liability to attach, the officer must have been in a position to intervene, meaning he

"was physically able and had a realistic chance to intervene and act in time to protect the

inmate Plaintiff." *Hinds*, 2020 WL 6732514, at *4 (quoting *Seals v. Marcus*, 2013 U.S.

Dist. LEXIS 25299, at *19, 2013 WL 656873, at *7 (M.D. Ga. Jan. 25, 2013), *report and*

*recommendation adopted*, 2013 U.S. Dist. LEXIS 24128, 2013 WL 663579 (M.D. Ga. Feb.

22, 2013)); *see also Smith v. Messinger*, 293 F.3d 641, 650-51 (3d Cir. 2002); *Lanigan v.*

*Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

It follows then, for there to be a failure to intervene, "there must exist an underlying

constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Sanders*

*v. City of Union Springs*, 207 Fed. Appx. 960, 965-66 (11th Cir. 2006); *Ford v. Fleming*,

229 F.3d 1163, 2000 WL 1346392 (10th Cir. Sept. 19, 2000) (unpublished) (holding that claims involving a failure to intervene were precluded by the jury's conclusion that no constitutional violations had taken place). Here, because there is genuine dispute as to whether there was an unconstitutional use of force, and, taking as true Plaintiff's sworn assertions that Defendant Crittenden stood by and watched Defendants Lovejoy and Isaac assault Plaintiff, the Motion for Summary Judgment regarding Plaintiff's excessive force claim against Defendant Crittenden for his failure to protect is due to be denied.

### (3)      Deliberate Indifference Claims

Last, Plaintiff alleges Defendants denied him medical treatment after the assault and that he was taken to medical only after shifts changed and Officer Boyd saw that he needed medical treatment. Doc. 1 at 4; *see also* Doc. 24 at 5. On the contrary, Defendants Lovejoy and Isaac contend that Plaintiff refused a medical exam after the incident. Docs. 22-2 at 1, 22-4 at 1.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle*, 429 U.S. at 104). To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove *both* an objective and subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (quotation marks and citation omitted). "For example, we have concluded that a freely bleeding cut that created a pool of blood on the ground and required stitches presented a serious medical need." *Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2019) (citing *Aldridge v. Montgomery*, 753 F.2d 970, 972-73 (11th Cir. 1985) (per curiam)). The Eleventh Circuit has "also found broken bones to constitute a serious medical need." *Id*. (citing *Brown v. Hughes*, 894 F.2d 1533, 1538-39 (11th Cir. 1990) (per curiam)). "And depending on the circumstances, severe pain that is not promptly or adequately treated can present a serious medical need." *Id*. (citing *McElligott v. Foley*, 182 F.3d 1248, 1255-59 (11th Cir. 1999)).

Plaintiff has failed to satisfy this first hurdle. Plaintiff's medical evidence reflects that, while medical personnel provided him a wrist brace when he was eventually taken for treatment, medical personnel thought no medical attention or treatment beyond administration of Advil was appropriate. Plaintiff's x-rays further show that, although he suffered from bruising and pain, he suffered no broken bones. Plaintiff has provided no medical evidence that his injuries were serious enough to require medical attention any earlier than when he received it. *See Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 514 (11th Cir. 2010). "And, though his alleged injuries likely caused pain and discomfort, Plaintiff has not provided any medical evidence to suggest that the delay exacerbated Plaintiff's injuries to the point of an objectively serious medical need or even ran the risk of doing so. The medical evidence in the record confirms that Plaintiff's

asserted symptoms . . . while they no doubt caused him pain, did not indicate a 'life-threatening condition[ ] or situation[ ] where it [was] apparent delay would detrimentally exacerbate the medical problem' to a lay person, *Hill,* 40 F.3d at 1187, or 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Fernandez*, 397 F. App'x at 514 (citing *Farrow,* 320 F.3d at 1243) (quoting *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000)). Indeed, Plaintiff's medical records show that he had no notable injuries ten days after the alleged assault. Doc. 22-12 at 10. Further, the medical records show, while Plaintiff complained of headaches in December 2018, he told medical personnel that he did not suffer from any head trauma to cause his headaches. *See* Doc. 22-12 at 3. Plaintiff makes no argument in either his Complaint or his affidavit that his condition worsened due to the alleged delay in treatment. Consequently, Plaintiff's deliberate-indifference claim fails because he did not satisfy the causation requirement. Because the record does not support the conclusion that Plaintiff suffered a violation of his Eighth Amendment right to be free from deliberate indifference to a serious medical need, Defendants are entitled to qualified immunity on this claim.

## IV.   CONCLUSION

For the reasons above, the Magistrate Judge RECOMMENDS the following:

1.     Defendants' Motion for Summary Judgment (Doc. 22) be GRANTED in part and DENIED in part, as set forth below:

A.     Defendants' motion regarding Plaintiff's claims for monetary damages against Defendants in their official capacity be GRANTED and these claims

DISMISSED with prejudice, as Defendants are entitled to absolute immunity from this relief.

        B.     Defendants' motion regarding Plaintiff's claim of deliberate indifference to his serious medical needs against Defendants in their individual capacities be GRANTED, as Defendants are entitled to qualified immunity on this claim.

        C.     Defendants' motion regarding Plaintiff's claim of excessive force against Defendants Lovejoy and Isaac in their individual capacities be DENIED.

        D.     Defendants' motion regarding Plaintiff's claim of failure to protect against Defendant Crittenden in his individual capacity be DENIED.

    2.     This case be set for a bench trial on Plaintiff's excessive force and failure to protect claims against Defendants.

Further, it is ORDERED that by **April 28, 2022,** the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

      DONE this 14th day of April, 2022.

            /s/ Kelly Fitzgerald Pate
            KELLY FITZGERALD PATE
            UNITED STATES MAGISTRATE JUDGE